## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JEANETTE JERGENS,<br><br>Plaintiff,<br><br>vs.<br><br>MARIAS MEDICAL CENTER, et al,<br><br>Defendants. | CV 20-15-GF-BMM<br><br><br><br>**ORDER** |

## PROCEDURAL BACKGROUND.

Plaintiff Jeanette Jergens ("Jergens") filed a Complaint against the Marias Medical Center, the Board of County Commissioners of Toole County, and Cindy Lamb on February 26, 2020. Doc. 1. Jergens alleges that Defendants violated the Family and Medical Leave Act ("FMLA") and the due process clause of the United States Constitution. Doc. 1 at 6. Jergens filed a Motion for Summary Judgment. Doc. 19. Defendant Lamb individually filed a Motion for Summary Judgment. Doc. 32. Defendants collectively filed a Motion for Summary Judgment. Doc. 37. The Court held a hearing on May 24, 2021. Doc. 58.

## FACTUAL BACKGROUND.

This case constitutes the latest chapter in a lengthy saga of litigation arising from an employment dispute between Jergens and Defendants. Jergens worked off

and on for Defendant Marias Medical Center for 26 years, starting as a certified surgical technologist in 1983.  *Id*. at 2−3.   Defendant Marias Medical Center terminated Jergens's employment on August 28, 2015.  Doc. 9 at 2.

On July 10, 2015, Defendant Marias Medical Center placed Jergens on paid administrative leave while it investigated allegations that Jergens had engaged in workplace misconduct.  *Id*.  Jergens claims that she began experiencing anxiety shortly after having been placed on leave.  Doc. 21 at 4.   Jergens began self-medicating with melatonin, ZzzQuil, and over-the-counter pain relief.  *Id*.  Jergens sought treatment from Dr. Hardy.  *Id*.   Dr. Hardy prescribed Jergens anxiety medication and sent a three-sentence letter ("Dr. Hardy's Letter") to Defendant Marias Medical Center.  *Id*. Dr. Hardy's letter stated generally that Jergens had started medication for anxiety and then noted that the medication needs at least 2 weeks before it is "advisable that [Jergens] participate in any emotionally stressful situations."  Doc. 48-3 at 2.

Defendant Cindy Lamb ("Defendant Lamb") worked for Defendant Marias Medical Center as the Director of Human Resources.  Doc. 1 at 7.  Defendant Lamb received Dr. Hardy's letter and forwarded it to Michele Puiggari ("Puiggari"), the employment expert whom Defendant Marias Medical Center had hired to investigate the workplace misconduct allegations against Jergens.  *Id*. at 9.  Puiggari issued the Final Investigative Report ("FIR") after finishing her investigation.  Doc. 48-2.  The

FIR listed Dr. Hardy's letter under "relevant documents." *Id*. at 9. Defendant Marias Medical Center terminated Jergens on August 28, 2015. Doc. 9 at 2.

After Defendant Marias Medical Center terminated her employment, Jergens filed suit (*Jergens I*) in the Ninth Judicial District Court, Toole County, Montana on August 17, 2016. Doc. 23 at 6−13. Jergens alleged violation of the Wrongful Discharge from Employment Act, defamation, invasion of privacy, and intentional infliction of emotional distress. *Id*. During discovery, Jergens requested on October 24, 2016, all documents related to her employment and termination. Doc. 22 at 2. Defendant Lamb, among others, prepared Defendants' discovery responses. Defendants responded on November 28, 2016. Jergens concedes that the discovery responses stated that the FIR (and its reference to Dr. Hardy's Letter) had been disclosed. Doc. 20 at 7. The Defendants had failed, however, to include a copy of the FIR. Jergens apparently failed to notice this omission for several months.

All parties realized the omission of the FIR during Jergens's deposition on February 28, 2017. *Id*. A year later, on February 18, 2018, the Montana Human Rights Board issued Jergens the Right to Sue on claims of discrimination and privacy violations. *Id*. at 8. Jergens based these claims on the FIR and Dr. Hardy's letter. Jergens filed a second suit (*Jergens II*) in the Ninth Judicial District Court, Toole County, Montana on April 28, 2018, in which she raised claims of discrimination

and privacy violations.  The jury in *Jergens I* awarded Jergens $80,762 on May 16, 2018.  Doc. 28 at 27.

During discovery in *Jergens II*, Defendants disclosed on July 29, 2019, several emails between Puiggari, the employment law expert, and Defendant Lamb. Doc. 20 at 8.  In these emails, Puiggari and Defendant Lamb discussed briefly Defendant Jergens's case and the possibility of FMLA leave.  Docs. 51-1, 51-2.  On November 12, 2019, Jergens sought to amend *Jergens II* to include claims for violation of the FMLA, the due process clause, and the equal protections clause. Doc. 39-3.  On February 25, 2020, Jergens withdrew her motion to amend *Jergens II*.  On the same day, the district court in *Jergens II* granted summary judgment and dismissed the case.  Doc. 31.  Jergens filed this suit (*Jergens III*) in federal court on February 26, 2020, alleging the same violations under the FMLA, due process clause, and the equal protections clause.  Doc. 1.

**DEFENDANT LAMB'S MOTION FOR SUMMARY JUDGMENT (DOC. 32).**

Defendant Lamb asked the Court to determine that she is entitled to qualified immunity against the claims that Jergens alleges against her.  Doc. 33.  Jergens's claims against Defendant Lamb revolve around the failure to include the FIR and Dr. Hardy's letter in Defendants' discovery responses in *Jergens I*.  Specifically, Jergens alleges that Defendant Lamb "purposefully withheld documentation in discovery that supported an inference of illegal discrimination against [Jergens], as

4

well as evidence of interference with [Jergens's] FMLA rights." Doc. 1 at 7. Jergens alleges that withholding these documents barred her from presenting at trial all the claims that she otherwise would have brought. *Id*.

Qualified immunity shields a government official from civil damages liability unless the official violated a statutory or constitutional right that was "clearly established" at the time of the official's conduct. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The Court may grant qualified immunity on the ground that a purported right was not "clearly established" without resolving the often more difficult question whether the purported right exists at all. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To be "clearly established," a right must be sufficiently clear "that every reasonable official would [have understood] that what [he or she] is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal quotations omitted).

Neither the parties nor the Court have been able to identify a case premised on an individual's constitutional right to prompt discovery in civil litigation. This absence of case law likely results from the Federal Rules of Civil Procedures which serve as the preferred channel by which parties challenge discovery practices in civil litigation. *See e.g.*, Fed. R. Civ. P. 37 (providing sanctions against a party who fails to provide discovery or to obey a discovery order); *Campidoglio LLC v. Wells Fargo*

*& Co.*, 870 F.3d 963, 975 (9th Cir. 2017).   Federal district courts possess great discretion in resolving discovery disputes and in protecting parties from misconduct in the discovery process.   *Id*.   Fed. R. Civ. P. 37(a) authorizes a district court to impose monetary sanctions under certain circumstances and to compel parties to respond to discovery requests.

Jergens has not provided any evidence that a right to prompt discovery in civil litigation is "clearly established" under the doctrine of qualified immunity. Defendant Lamb remains entitled to qualified immunity.   *Reichle*, 566 U.S. at 664. The Court need not address here whether Jergens possesses that right at all.   *See Pearson*, 555 U.S. at 236.   Defendant Lamb's Motion for Summary Judgment (Doc. 32) is granted.   Defendant Lamb is dismissed.   The Court will consider the remaining Motions for Summary Judgment (Doc. 32, 37) as they relate to Defendant Marias Medical Center and Defendant Board of County Commissioners of Toole County.

## PARTIES' MOTIONS FOR SUMMARY JUDGMENT (DOCS. 32 & 37).

Defendants argue that they are entitled to summary judgment for the following reasons: (1) Jergens's FMLA claim fails as a matter of law; (2) Jergens's constitutional claim fails as a matter of law; and (3) the doctrine of res judicata bars both Jergens's FMLA claim and her constitutional claim.   Doc. 38.   Jergens argues,

conversely, that she is entitled to summary judgment because both her FMLA claim and her constitutional claim succeed as a matter of law.  Doc. 20.

**ANALYSIS.**

**(1) Plaintiff's FMLA Claim.**

"The FMLA provides job security to employees who must be absent from work because of their own illness, to care for family members who are ill, or to care for new babies."  *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020) (citing 29 C.F.R. § 825.222(c)).  Congress made it unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided" by the FMLA.  *Bachelder v. America West Airlines¸ Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (quoting 29 U.S.C. § 2615(a)(1)).

Employers maintain a duty under certain circumstances to notify an employee of his or her potential eligibility to take FMLA leave.  *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134–35 (9th Cir. 2003); 29 C.F.R. § 825.300(d)-(e).  The failure to provide this notice, however, does not result in a standalone cause of action; rather, "an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

The FMLA includes several limitations on an employee's claim that an employer violated the FMLA.  First, the FMLA "provides no relief unless the

employee has been prejudiced by the violation." *Id*.  Second, an employee alleging claims under the FMLA generally must bring his or her claims within two years "after the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  Each of these limitations separately prove fatal to Jergens's FMLA claim.

### (a) Prejudice Requirement.

Jergens alleges Defendants violated the FMLA by "[interfering] with [her] FMLA rights by failing to notify her that she was entitled to the statutorily-mandated twelve weeks of leave."  Doc. 1 at 6.  The record provides no evidence, however, that Jergens suffered any prejudice by this alleged violation.  *See Ragsdale*, 535 U.S. at 89.  Defendants placed Jergens on paid administrative leave while they investigated allegations against her for workplace misconduct.  Doc. 1 at 2.  The FMLA does not require employers to provide their employees with paid time off.  29 U.S.C. § 2612(a).  The FMLA only entitles employees to take unpaid leave.  *Id*. The FMLA even permits employers to require that employees taking FMLA leave must use accrued paid personal or vacation leave in conjunction with the unpaid FMLA leave.  29 U.S.C. §2612(d)(2)(A).

Consequently, if Defendants had provided the notice Jergens alleges the FMLA required them to provide, then Jergens would have been worse off to take the

FMLA leave because she either would have been on unpaid FMLA leave or have been forced to use her accrued paid personal or vacation leave. *See id.*

Jergens seems to argue that taking FMLA leave would have prevented Defendants from terminating her employment, and, therefore, she suffered prejudice when Defendants terminated her employment. Doc. 1 at 6. Jergens misunderstands how the FMLA operates to protect employees. The FMLA does not provide employees with immunity from termination. The FMLA does not entitle an employee to any rights, benefits, or positions they would not have been entitled to receive had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). An employee taking FMLA would be subject to the same work-related consequences to which an employee not taking FMLA leave would be subject. The FMLA "simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions." *Xin Liu v. Amway Corp*, 347 F.3d 1125, 1132 (9th Cir. 2003). An employer cannot fire an employee taking FMLA leave based solely on the employee taking FMLA leave. The adverse actions forbidden under the FMLA must be based on employee's taking leave. Defendants terminated Jergens employment based on numerous allegations of workplace misconduct, not because she took FMLA leave. Jergens bases her entire claim on the fact that she did not receive FMLA leave.

Jergens ultimately suffered no prejudice based on Defendants' alleged FMLA violations. *See Ragsdale*, 535 U.S. at 89. Defendants placed Jergens on paid administrative leave, whereas the FMLA allows for unpaid leave. Doc. 1 at 2. Jergens failed to present any evidence that Defendants terminated Jergens's employment or retaliated against them for anything related to taking FMLA leave. Jergens did not specifically request FMLA leave or ask for any other kind of leave. Doc. 58. In fact, Jergens conceded at the hearing that she did not want to take leave. *Id*. Jergens's failure to identify any prejudice that she suffered as a result of Defendants' alleged FMLA violations requires rejection of Jergens's claim under the FMLA as a matter of law. *See Ragsdale*, 535 U.S. at 89.

**(b) Statute of Limitations.**

An action under the FMLA generally must be brought within two years "after the date of the last event constituting the alleged violation." *Olson v. United States by and through Dep't of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020). The statute of limitations is three years when an employer commits a "willful violation." *Id*. A "willful violation" occurs when an employer knew or showed reckless disregard for whether its conduct violated the FMLA. *Id*.

The Complaint alleges that Defendants violated the FMLA by "failing to notify [Jergens] that she was entitled to the statutorily-mandated twelve weeks of leave." Doc. 1 at 6. Jergens does not state clearly the exact moment Defendants

10

allegedly violated the FMLA.  One possibility is when Defendants placed Jergens on paid administrative leave on July 10, 2015.  A second possibility is when Defendants received Dr. Hardy's letter in late July or early August.  A third possibility is when Defendants terminated Jergens's employment on August 28, 2015.  At none of these instances did Defendants notify Jergens that she might be eligible for FMLA leave.  Even if the Court were to determine that the latest date (August 28, 2015) qualifies as the "last event constituting the alleged violation," and allows for the longer statute of limitations, the outcome of the Court's analysis does not change.

The statute of limitations under the FMLA would bar Jergens's claim after August 28, 2018--three years after Defendants terminated Jergens's employment without informing her about potential FMLA leave.  *Olson*, 980 F.3d at 1339. Jergens first brought her FMLA claim when she sought to amend the complaint in *Jergens II* on November 12, 2019. Jergens later included her FMLA claim in *Jergens III* on February 26, 2020.  Both these dates fall far outside the three-year statute of limitations for FMLA claims.  *Id*.

Jergens suggested that the statute of limitations began to run on July 29, 2019: the date when Jergens learned that Defendants had discussed via email Jergens potential FMLA eligibility.  Doc. 58.  The Court disagrees.  The FMLA states that the statute of limitations begins "after the date of the last event constituting the

alleged violation." *Olson*, 980 F.3d at 1339.  The latest date that the Court can conceive of constituting an alleged violation would be when Defendants terminated Jergens's employment on August 28, 2015.

Jergens argues that she only became aware of the alleged violation on July 29, 2019.  This claim proves dubious.  Jergens maintained constructive knowledge of the FMLA and its requirements.  At the motion hearing, Jergens conceded that Defendants had posted the required FMLA informational posters around the workplace.  Doc. 58.  As a result, Jergens knew or should have known once she was fired on August 28, 2015, that Defendants had failed to inform her of the potential for FMLA leave.

Moreover, Jergens obtained legal counsel some time before filing *Jergens I* on August 19, 2016.  Jergens maintained the same counsel through both *Jergens I* and *Jergens II*, and continues to maintain the same counsel presently in *Jergens III*. The Court finds it difficult to understand how it took almost four years, most or all of it with legal representation, to realize that Jergens might possess a claim under the FMLA.

Finally, Jergens's FMLA claims remain time barred even if the Court were to assume that the statute of limitations began when Defendants terminated her employment on August 28, 2015.  *See Olson*, 980 F.3d at 1339.  Jergens first raised her FMLA claims on November 12, 2019, when she sought to amend her complaint

in *Jergens II*.  This late filed date also falls outside the longer three-year statute of libations for a "willful violation" of the FMLA.  *Id.*

**(2) Jergens's Constitutional Claim.**

Jergens alleges in short that Defendants violated her procedural due process rights by improperly depriving her of prompt discovery in civil litigation.  Doc. 1 at 7.  Jergens argues that this deprivation denied her the ability to bring her choice of legitimate claims that would afford her the maximum damage award.  *Id.*  Jergens alleges that Defendants withheld the documents (*i.e.*, the FIR and Dr. Hardy's letter) that she would need to support some number of claims (*i.e.*, discrimination and interference with FMLA rights) that she would otherwise have brought.  *Id.*

A procedural due process claim has the following two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.  *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  As an initial matter, neither the parties, nor the Court, can cite a case that supports Jergens's claim that she maintains a constitutional right to prompt discovery in civil litigation.  Moreover, assuming *arguendo* that Jergens possesses this right, Jergens fails to demonstrate a deprivation of that right or a denial of adequate procedural protections.  *See McQuillion*, 306 F.3d at 900.

Jergens sought through discovery in *Jergens I* all documents related to her termination.  Even assuming Jergens knew or should have known of the missing

discovery, Defendants, at the very latest, disclosed the FIR and Dr. Hardy's letter on February 28, 2017, during Jergens's deposition.  Doc. 20 at 7.  The disclosure came approximately 90 days after Defendants had provided their initial discovery responses.  This subsequent disclosure of the FIR and Dr. Hardy's letter did not deprive Jergens of any right or cause her any prejudice.  Jergens received the FIR and Dr. Hardy's letter 442 days before the trial occurred in *Jergens I*.  Jergens maintained more than adequate time to add any new claims, depose any necessary witnesses, or conduct whatever pretrial discovery that she needed in order to bring any new claims that the late disclosures may have revealed.

Moreover, Jergens failed to demonstrate that suffered a denial of procedural safeguards.  As the Court noted above, Jergens maintained the full arsenal of remedial measures authorized by the Montana Rules of Civil Procedure.  Jergens's failure to avail herself of those measures does not allow Jergens to escape the requirement that she demonstrate a denial of adequate procedural safeguards.  *See McQuillion*, 306 F.3d at 900.

In conclusion, the Court maintains strong hesitation regarding Jergens's assertion that she possesses a constitutional right to prompt discovery in civil litigation.  The Court need not resolve this issue, however, because Jergens fails to demonstrate either a deprivation of that right, assuming she possesses it, or a denial

14

of procedural safeguards.  Jergens's constitutional claim fails as a matter of law.  *See*

*McQuillion*, 306 F.3d at 900.

**(3) Res Judicata.**

The doctrine of res judicata, also known as claim preclusion, bars a party from

re-litigating claims that the party raised, or could have raised, in a prior action.

*Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001);

*Wiser v. Montana Bd. of Dentistry*, 251, P.3d 675, 676 (Mont. 2011).  The law

premises the doctrine of res judicata on the policy that there must be some end to

litigation.  *Wiser*, 251 P.3d at 676.  The *Jergens* series of cases highlights clearly the

need for this policy.

Federal courts must apply the law of the state in which the state court

proceeding occurred when considering res judicata based on a previous state court

proceeding.  *Adams Brothers Farming, Inc. v. County of Santa Barbara*, 604 F.3d

1142, 1148 (9th Cir. 2010).  The Court must look, therefore, to Montana law to

determine whether the previous state court proceedings either in *Jergens I* or

*Jergens II* serve to bar the claims that Jergens now asserts in *Jergens III*.  *Id*.

Montana's doctrine of res judicata has the following five elements: (1) the

parties or their privies must be the same in the previous and subsequent actions; (2)

the subject matter must be the same in the previous and subsequent actions; (3) the

issues must be the same in the previous and subsequent actions, or the issues must

15

relate to the same subject matter and could have been raised in the previous action; (4) the capacities of the parties must be the same in reference to the subject matter and the issues raised in the actions; and, (5) the previous action must have ended with a final judgment on the merits. *Brilz v. Metropolitan General Ins. Co.*, 285 P.3d 494, 501 (Mont. 2012).

### (1) Same Parties.

The first element of res judicata requires that the parties be the same in the previous and subsequent action. *Brilz*, 285 P.3d at 501. Jergens was the plaintiff in all three cases. The remaining defendants in *Jergens III* were also defendants in *Jergens I* and *Jergens II*. *Compare* Doc. 1 at 1, Doc. 23 at 5, Doc. 31 at 3. These factors satisfy the first element of res judicata.

### (2) Same Subject Matter.

The second element of res judicata requires that the subject matter be the same in the previous and subsequent action. *Brilz*, 285 P.3d at 501. The subject matter of *Jergens III* constitutes the same subject matter as in *Jergens I* and *Jergens II*. All three cases stemmed from 2015 employment dispute between Jergens and Defendants. The second element of res judicata is satisfied.

### (3) Same Issues Relating to the Same Subject Matter.

The third element of res judicata requires that the issues be the same in the subsequent and previous action, or the issues in the subsequent action must relate to

16

the same subject matter in the previous action and could have been raised in the previous action. *Brilz*, 285 P.3d at 501. In this case, the Court must consider whether Jergens could have raised in either *Jergens I* or *Jergens II* the claims that she now brings in *Jergens III*—FMLA and due process.

### (a) FMLA Claim.

Jergens bases her FMLA claim on Defendants' failure to notify her that she might be eligible for FMLA leave. Doc. 1 at 6. The exact date by which Jergens could have first brought her FMLA claim remains difficult to determine. The record makes a few things apparent. Jergens knew at the time of her termination (August 28, 2015) that Defendants had not notified her that she might be eligible for FMLA leave. Defendants disclosed the FIR and Dr. Hardy's letter on February 28, 2017. Jergens asserts repeatedly in her Complaint that these documents represent "evidence of interference with [Jergens's] FMLA rights." Doc. 1 at 7. Presumably the "FMLA rights" that Jergens alleges Defendants interfered with included a right to FMLA leave. Finally, Defendants disclosed emails from Puiggari to Defendant Lamb in *Jergens II* in which Puiggari discussed with Defendant Lamb the possibility of FMLA leave for Jergens.

Jergens's assertion that the FIR and Dr. Hardy's letter represent "evidence of interference with [Jergens's] FMLA rights" indicates that Jergens knew of the potential FMLA violations on February 28, 2017. Jergens possessed this knowledge

442 days before the trial in *Jergens I* (May 16, 2018) and 424 days before filing *Jergens II* (April 28, 2018). Without a doubt, Jergens became aware of a potential FMLA claim on July 29, 2019, when Defendants disclosed the Puiggari emails. Jergens waited 102 days to amend *Jergens II* to include her FMLA claim. Jergens withdrew her motion to amend *Jergens II* to file her FMLA claims in *Jergens III*.

It matters little whether Jergens should have known that Defendants violated her FMLA rights when Defendants terminated her employment or when Defendants disclosed the FIR and Dr. Hardy's Letter, or when Defendants disclosed the Puiggari emails. The third element of res judicata requires that Jergens could have raised these issues in a previous action. *Brilz*, 285 P.3d at 501. Although Jergens likely could have raised her FMLA claim in *Jergens I*, she, in fact, did raise her FMLA claims in *Jergens II*. The third element of res judicata is satisfied regarding Jergens's FMLA claim.

### (b) Due Process Claim.

Jergens bases her due process claim on Defendants' delayed disclosures of the FIR and Dr. Hardy's letter. Doc. 1 at 7. The record makes clear that Jergens could have brought this claim in either *Jergens I* or *Jergens II*. Jergens made her discovery requests for *Jergens I* on October 24, 2016. Defendants provided their response, without the FIR and Dr. Hardy's letter, on November 28, 2016. Defendants later disclosed both the FIR and Dr. Hardy's letter on February 28, 2017. This disclosure

18

date proves crucial.  Jergens received the FIR and Dr. Hardy's letter (*i.e.*, the basis for Jergens due process claim) 442 days before the trial in *Jergens I* (May 16, 2018) and 424 days before filing *Jergens II* (April 28, 2018).

Jergens alleges that Defendants violated her "constitutional right of due process by denying her the choice of legitimate claims" by withholding documents in discovery.  Doc. 1 at 7.  The record makes clear that Jergens had over a year either to amend *Jergens I* or to file *Jergens II* initially to include her due process claim. The third element of res judicata is satisfied regarding Jergens's due process claim. *See Brilz*, 285 P.3d at 501.

### (4) Capacities of the Parties are the Same.

The fourth element of res judicata requires that the capacities of the parties be the same in the subsequent and previous litigations.  *Brilz*, 285 P.3d at 501.  The fourth element is also satisfied.  In *Jergens I*, *Jergens II*, and *Jergens III*, Jergens personally sued Defendant Marias Medical Center as a public entity, owned and operated by Defendant Board of County Commissioners of Toole County.

### (5) Final Judgment on the Merits.

The fifth element of res judicata requires that the previous actions conclude with a final judgment on the merits.  *Brilz*, 285 P.3d at 501.  *Jergens I* went to trial and resulted in a jury verdict.  The Montana Supreme Court affirmed.  *Jergens v. Marias Medical Center*, 459 P.3d 214 (Mont. 2019).  The state district court entered

a final judgment in *Jergens II* by granting Defendants' motion for summary judgment.  Doc. 31 at 2−8.  Jergens did not appeal.  The fifth element is satisfied.

**Conclusion**

Res judicata bars Jergens's FMLA claim and due process claim.

**IT IS HEREBY ORDERED**:

1.  Plaintiff Jergens's Motion for Summary Judgment (Doc. 19) is **DENIED**.

2.  Defendant Lamb's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

    Defendant Lamb is **DISMISSED** with prejudice.

3.  Defendants' Motion for Summary Judgment (Doc. 37) is **GRANTED**.

    This case is **DISMISSED** with prejudice.

    Dated the 30th day of July, 2021.

_____
Brian Morris, Chief District Judge
United States District Court